1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15

| | |
|---|---|
| NATHANIEL PHILLIPS, | 1:10-CV-00462 LJO MJS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| MATTHEW CATE, Secretary, | |
| Respondent. | |

16
17
18
19
20
21

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus (Pet., ECF No. 1) pursuant to 28 U.S.C. § 2254. Respondent, Matthew Cate, as the Secretary of the California Department of Corrections and Rehabilitation, is hereby substituted as the proper named respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. Respondent is represented in this action by John Bachman, Esq., of the Office of the Attorney General for the State of California.

22

## I.    PROPER RESPONDENT

23
24
25
26
27
28

The rules governing relief under 28 U.S.C. § 2254 require a person in custody pursuant to the judgment of a state court to name the "'state officer having custody'" of him as the respondent. Ortiz-Sandoval v. Gomez, 81 F.3d 891, 894 (9th Cir. 1996) (quoting Rule 2(a) of the Rules Governing Habeas Corpus Cases Under Section 2254). This person typically is the warden of the facility in which the petitioner is incarcerated. See Stanley v. California Supreme

Court, 21 F.3d 359, 360 (9th Cir. 1994). Failure to name the petitioner's custodian as a respondent deprives federal courts of personal jurisdiction, see id., but the allegations of the petition are to be liberally construed when considering whether the proper respondent has been named, see Belgarde v. Montana, 123 F.3d 1210, 1214 (9th Cir. 1997). The "'state officer having custody'" also may include "'the chief officer in charge of state penal institutions.'" Ortiz-Sandoval, 81 F.3d at 894 (quoting Rule 2(a) advisory committee's note).

Petitioner is presently housed at Red Rock Correctional Center in Eloy, Arizona. Without knowing the terms of the agreement under which Petitioner was sent to Arizona, the Court is uncertain who is the proper respondent, but the Secretary of the California Department of Corrections and Rehabilitation, Matthew Cate, should be "the state officer who has custody" of Petitioner. See Rule 2(a) advisory committee's note; Fed. R. Civ. P. 19(a). Accordingly, Matthew Cate is properly named as the respondent in this action, see Ortiz-Sandoval, 81 F.3d at 896. See Sky v. Stolc, 2012 U.S. App. LEXIS 18515 (9th Cir. Aug. 31, 2012); see also Belgarde, 123 F.3d at 1214 (construing pro se habeas petitions with deference).

## II.    **BACKGROUND**[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on April 20, 2007, of possession of a firearm by a felon and possession of an unregistered weapon in public. (Lodged Doc. 1 at 378-79.) The jury found true enhancements to Petitioner's convictions based on his prior felony convictions. (Id.)

On May 18, 2007, the trial court sentenced Petitioner to state prison for a determinate term of nine years. (Id.) On March 19, 2008, the California Court of Appeal, Fifth Appellate District, affirmed the judgment of the trial court.  (Lodged Doc. 5.) Petitioner did not file a petition for review in the California Supreme Court.

Petitioner filed a petition for writ of habeas corpus in the California Supreme Court on

---

[1]This information is derived from the state court records lodged by Respondent with his response and is not disputed by the parties.

July 17, 2008. (Lodged Doc. 6.) The petition was summarily denied on January 14, 2009. (Lodged Doc. 7.) Petitioner then proceeded to file a petition for writ of habeas corpus in the Kern County Superior Court on February 25, 2009. (Lodged Doc. 8.) The petition was denied by the Kern County Superior Court in a reasoned decision on April 17, 2009. (Lodged Doc. 9.) Petitioner filed petitions for writ of habeas corpus in the California Court of Appeal, Fifth Appellate District, on June 4, 2009, and the California Supreme Court on August 12, 2009. (Lodged Docs. 10, 12.) Those petitions were denied on June 26, 2009, and January 13, 2010, respectively. (Lodged Docs. 11, 13.) While the appellate court's denial of the petition was silent, the California Supreme Court denied the petition with a citation to In re Clark, 5 Cal.4th 750 (1993). (Lodged Doc. 13.)

On March 15, 2010, Petitioner filed the instant federal habeas corpus petition. Petitioner raises the following five claims for relief:[2]

(1) That Petitioner is factually innocent of the offense of possessing a firearm;

(2) That the prosecution engaged in misconduct by tampering with evidence, destroying evidence of exculpatory value, withholding exculpatory evidence, and introducing falsified evidence in the form of falsified photographs,

(3) That the court improperly enhanced Petitioner's sentence under Cunningham v. California, 549 U.S. 270 (2007);

(4) That the prosecution failed to present sufficient evidence that the firearm was functional; and

(5) Ineffective assistance of counsel.

On October 13, 2010, Respondent filed an answer to the petition.  Petitioner did not file a response.

///

///

_____

[2] Petitioner presented eight claims in his Petition. (Pet. at 10.) However, upon review, Petitioner only presents five separate claims. Claims two through four all allege prosecutorial misconduct, and claims five and eight both present claims of sentencing error. Accordingly, the Court shall consolidate the claims as described above.

III.    **STATEMENT OF THE FACTS**[3]

On October 2, 2006, at about 6:00 P.M., Sgt. Jehle responded to a call of shots being fired at or near the Willows apartment complex on 3701 Q. Street in Bakersfield, California. Sgt. Jehle noticed that petitioner was jogging without jogging apparel and looking furtively over his shoulder. Petitioner continued to jog when Sgt. Jehle made eye contact with him. However, when Officer Jehle identified himself as a police officer, petitioner uttered an expletive and continued to jog at a rapid rate of speed, refusing to stop.

Petitioner attempted to vault the gate, which eventually opened. A foot chase ensued during which time Sgt. Jehle noticed petitioner had a handgun in his right pocket and witnessed petitioner removing said gun from the pocket. At a time in the pursuit when Sgt. Jehle had temporarily lost sight of petitioner in the complex, he heard a metallic thud on the roof above petitioner's location. Subsequently, petitioner was arrested without incident. Sgt. Jehle had also seen a cell phone in petitioner's left hand during the pursuit. Petitioner still had possession of the phone when he was arrested. Sgt. Jehle did not know what ultimately happened to the phone but it appeared it was not seized as evidence.

Meanwhile, Officer Park with other officers arrived on the scene. Officer Park went onto the roof, and recovered a loaded .22 caliber weapon with nine live rounds of ammunition. He put it in an envelope handing it to Sgt. Jehle. Sgt. Jehle extracted the gun from the envelope, removed the shells, and after examination of the gun, put both the gun and shells into the envelope for placement in the proper room. Both officers used gloves when handling the gun and ammunition.

Petitioner was on parole for armed robbery at the time of his arrest. A subsequent parole search at petitioner's mother, Cynthia Porter's home revealed a photo album of gang affiliates and petitioner. Petitioner is a self-admitted member of the East Side Crips, and the sub-gang, the Eleventh Street Project Crips. There are photos of tattoos symbolizing such membership on petitioner's shoulders and chest.

(Lodged Doc. 9.)

IV.    **DISCUSSION**

A.    **Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner's claims involve those guaranteed by the U.S. Constitution and arise from the Kings County Superior Court of California, which is

---

[3]The Kern County Superior Court's summary of the facts in its April 17, 2009 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

**B.    Legal Standard of Review**

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

1.    Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405 06).  "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner." Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v.

1   Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application

2   of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions

3   must provide a governing legal principle (or principles) to the issue before the state court.

4   Lockyer v. Andrade, 538 U.S. 63, 70 71 (2003).   A state court decision will involve an

5   "unreasonable application of "federal law only if it is "objectively unreasonable."  Id. at 75-76

6   (quoting Williams, 529 U.S. at 409 10); Woodford v. Visciotti, 537 U.S. 19, 24 25 (2002). In

7   Harrington v. Richter, the Court further stresses that "an unreasonable application of federal

8   law is different from an incorrect application of federal law."  131 S. Ct. 770, 785 (2011) (citing

9   Williams, 529 U.S. at 410) (emphasis in original).   "A state court's determination that a claim

10  lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

11  correctness of the state court's decision."  Id. at 786 (citing Yarborough v. Alvarado, 541 U.S.

12  653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading

13  outcomes in case by case determinations."  Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010).

14  "It is not an unreasonable application of clearly established Federal law for a state court to

15  decline to apply a specific legal rule that has not been squarely established by this Court."

16  Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S. Ct. 1411, 1419 (2009) (quoting Richter, 131

17  S. Ct. at 786).

18              2.      Review of State Decisions

19      "Where there has been one reasoned state judgment rejecting a federal claim, later

20  unexplained orders upholding that judgment or rejecting the claim rest on the same grounds."

21  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the "look through"

22  presumption.   Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006).

23  Determining whether a state court's decision resulted from an unreasonable legal or factual

24  conclusion, "does not require that there be an opinion from the state court explaining the state

25  court's reasoning."  Richter, 131 S. Ct. at 784 85. "Where a state court's decision is

26  unaccompanied by an explanation, the habeas petitioner's burden still must be met by

27  showing there was no reasonable basis for the state court to deny relief."  Id. ("This Court now

28  holds and reconfirms that § 2254(d) does not require a state court to give reasons before its

1   decision can be deemed to have been 'adjudicated on the merits.'").

2       Richter instructs that whether the state court decision is reasoned and explained, or

3   merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is

4   the same: "Under § 2254(d), a habeas court must determine what arguments or theories

5   supported or, as here, could have supported, the state court's decision; then it must ask

6   whether it is possible fairminded jurists could disagree that those arguments or theories are

7   inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong

8   case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

9   (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in

10  cases where there is no possibility fairminded jurists could disagree that the state court's

11  decision conflicts with this Court's precedents." Id. To put it yet another way:

12      As a condition for obtaining habeas corpus relief from a federal court, a state
        prisoner must show that the state court's ruling on the claim being presented in
13      federal court was so lacking in justification that there was an error well
        understood and comprehended in existing law beyond any possibility for
14      fairminded disagreement.

15  Id. at 786 87. The Court then explains the rationale for this rule, i.e., "that state courts are the

16  principal forum for asserting constitutional challenges to state convictions." Id. at 787. It

17  follows from this consideration that § 2254(d) "complements the exhaustion requirement and

18  the doctrine of procedural bar to ensure that state proceedings are the central process, not

19  just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes,

20  433 U.S. 72, 90 (1977)).

21          3.      Prejudicial Impact of Constitutional Error

22      The prejudicial impact of any constitutional error is assessed by asking whether the

23  error had "a substantial and injurious effect or influence in determining the jury's verdict."

24  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22

25  (2007) (holding that the Brecht standard applies whether or not the state court recognized the

26  error and reviewed it for harmlessness). Some constitutional errors, however, do not require

27  that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310

28  (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas

1  petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v.

2  Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do

3  not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d

4  911, 918, n. 7 (2002).  Musalin v. Lamarque, 555 F.3d at 834.

5       **C.    Claim One: Actual Innocence**

6       Petitioner claims that he is innocent and that the evidence does not support a conviction

7  for possession of a firearm. Specifically, Petitioner asserts that the police officer's testimony

8  that he had a cell phone and firearm in his possession during the chase was incorrect. (Pet.

9  at 15-17.)

10      1.    Relevant State Court Decision

11      On collateral appeal, the Kern County Superior Court denied the claim in Petitioner's

12  habeas corpus petition. Based on the "look-though" doctrine of Ylst v. Nunnemaker, the Kern

13  County Superior Court decision is considered to be adapted by the California Supreme Court

14  and the operative state court decision for this claim. 501 U.S. at 803. The court denied the

15  claim for the following reasons:

16          Petitioner must present evidence that the evidence of his innocence must
            so fundamentally undermine the prosecution's case. In re Clark (1993) 5 Cal.4th
17          750, 766. The evidence petitioner presents with this petition does nothing but
            corroborate the placement of the gun on the roof by himself prior to
18          apprehension by Officer Jehle. As noted above, the only additional evidence to
            that presented at trial, the statements of Joseph Atilano, does not favor
19          petitioner. Although he did not actually see petitioner throw any object on the
            roof, he stated that only Officer Jehle and petitioner were at the crime scene
20          prior to the arrival of other officers and he heard the sound consistent with
            throwing the gun on the roof. The gun had nine rounds of live ammunition when
21          it was thrown up on the roof and was operable. There is nothing other than
            petitioner's declaration to support any claim of innocence. In re Clark (1993) 5
22          Cal.4th 750, 766.

23  (Lodged Doc. 9.)

24      2.    Analysis

25      To the extent Petitioner claims that he is actually innocent, he lacks the clearly

26  established federal law, as determined by the Supreme Court, to support his position. See 28

27  U.S.C. § 2254(d)(2). "Claims of actual innocence based on newly discovered evidence have

28  never been held to state a ground for federal habeas relief absent an independent

constitutional violation occurring in the underlying state criminal proceedings." Herrera v. Collins, 506 U.S. 390, 401 (1993); see also House v. Bell, 547 U.S. 518, 555 (2006); District Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52 (2009) ("Whether such a federal right [to be released upon proof of actual innocence] exists is an open question. We have struggled with it over the years, in some cases assuming, arguendo, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet."); cf. In re Davis, 130 S.Ct. 1 (2009). Petitioner's actual innocence claim lacks the legal foundation to support relief under AEDPA. See Carey v. Musladin, 549 U.S. 70, 77 (2006).

Even if a claim of actual innocence based upon new evidence would support the issuance of a writ under AEDPA, Petitioner's evidence does not prove that he is innocent. A habeas petitioner asserting a freestanding claim of actual innocence must make a "stronger showing than [the] insufficiency of the evidence to convict" showing adopted by the Supreme Court in Jackson v. Virginia, 443 U.S. 307, 319 (1979). Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997). The required showing must go "beyond demonstrating doubt about [the petitioner's] guilt, and must affirmatively prove that he is probably innocent." Id. (citation omitted). Post conviction evidence serving only to "undercut the evidence presented at trial" does not suffice to meet this standard. Id. at 477; see also Spivey v. Rocha, 194 F.3d 971, 979 (9th Cir. 1999) (habeas relief unavailable where "the totality of the new evidence does not undermine the structure of the prosecution's case"); Swan v. Peterson, 6 F.3d 1373, 1384-85 (9th Cir. 1993) (newly-discovered evidence warrants habeas relief only when it bears on the constitutionality of the conviction and probably would produce an acquittal) (citations omitted).

Petitioner's purported "new evidence" does not meet this high standard. Petitioner's additional evidence consists of Petitioner's assertion that the officer's testimony that he had a cellphone in his hand during the chase was unreasonable, in light of inconsistencies in the officer's testimony and the potential difficulty Petitioner would have had in scaling a gate with a cell phone in his hand. This evidence, at best, may have supported Petitioner's version of the events. However, it does not prove he is innocent. If introduced at trial, it would have only

been evidence for the jury to consider in determining which version of the events to believe, and would likely have had little effect. The purported "new evidence" is not sufficient to affirmatively prove that Petitioner is probably innocent. Carriger, 132 F.3d at 476. Petitioner is not entitled to relief with regard to his first claim.

**D.    Claims Two Through Four: Prosecutorial Misconduct**

Petitioner next claims that the prosecution engaged in misconduct by tampering with, destroying, and withholding exculpatory evidence. Specifically, Petitioner alleges that the officers, upon finding the firearm on the roof, mishandled the gun, thereby spoiling scientific evidence and smearing possible fingerprints. The officers wore latex gloves while handling the gun, but Petitioner contends that they mishandled the gun by examining it and unloading it at the scene. (Pet. at 18-20.) Petitioner also asserts that the prosecution failed to provide pictures taken by Officer Park of the gun on the roof before it was retrieved. (Pet. at 24.) Finally, Petitioner asserts that the prosecution attempted to introduce other pictures, not taken at the time of the original investigation, as those taken by Officer Park. (Pet. at 25.)

1.    State Court Opinion

On collateral appeal, the Kern County Superior Court denied the claim in Petitioner's habeas corpus petition. Based on the "look-though" doctrine of Ylst v. Nunnemaker, the Kern County Superior Court decision is considered to be adapted by the California Supreme Court and the operative state court decision for this claim. 501 U.S. at 803. The court explained:

II. FALSIFICATION AND DESTRUCTION OF EVIDENCE

Petitioner contends that the evidence of his possession of a handgun is false, and that officers planted the handgun on the roof to frame him. No longer is there a requirement that the prosecution knew that the evidence was false. In re Hall (1981) 30 Cal.3d 408, 425. It is enough that the evidence had it not been introduced would change the outcome of the trial. In re Sassounian (1995) 9 Cal.4th 535, 546.

Here, there is no substantiation of petitioner's claim of prosecutorial misconduct by deliberately introducing false evidence. The fact that the gun was observed in petitioner's right pocket, and retrieved from the roof with nine rounds of live ammunition by two officers shows proof of circumstantial evidence and direct evidence that the gun was possessed by petitioner. Petitioner presents no countervailing declaration other than his explain the existence of the handgun. Petitioner's mother, Cynthia Porter was not there. Petitioner's allegations of being framed by the police and false testimony are conclusory without any

1    factual or documentary foundation. <u>People v. Duvall</u> (1995) 9 Cal.4th 464, 474,
     <u>People v. Karris</u> (1988) 46 Cal.3d 612, 656.

2
     Petitioner's claim that Sgt. Jehle tampered with and destroyed evidence
3    by handling the gun is not supported by the evidence. There is nothing in the
     evidence to suggest Jehle had reason to believe exculpatory evidence
4    (fingerprints of someone other than petitioner) was on the gun and his
     examination of the gun would eliminate them. There is nothing presented in the
5    petition to lead this court to believe petitioner could satisfy the bad faith showing
     required to prevail on a <u>Trombettta</u>-<u>Youngblood</u> motion.

6
     III. PROSECUTORIAL MISCONDUCT

7
     Failure to turn over evidence which is material to petitioner's guilt or
8    innocence is violation of due process (<u>Brady v. Maryland</u> (1963) 373 U.S. 83,
     88) regardless of whether or not the prosecution acted in good faith. Petitioner
9    contends that admission of the photographic evidence of the apartment complex
     (EXS. 4 and 5) violated due process. There was no suppression of material
10   evidence. Counsel did not exhibit surprise at their introduction on April 20, 2007.
     In fact, the trial judge denied their admission into evidence until there was
11   adequate cross-examination and authenticity. Contrary to petitioner's contention,
     there was not an attempt to represent the photographs as having been taken the
12   date of his arrest. The photographs were used as evidence of the complex
     configuration, but it was made clear they may not have been taken the date of
13   the incident.

14   (Lodged Doc. 9.)

15            2.   <u>Analysis</u>

16   Petitioner contends that Officer Jehle's handling of the gun removed latent prints that

17   had material and exculpatory value. (Pet. at 20.) "Petitioner alleges the action was taken in

18   bad faith, and that the gun should never have been permitted to be introduced into evidence."

19   (<u>Id.</u>) In light of the handling of the gun, and of the alleged problems in handling Petitioner's cell

20   phone and photo album, Petitioner claims that the trial was not fair and impartial.  (<u>Id.</u>)

21   Due process requires that the prosecution disclose exculpatory evidence within its

22   possession. <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963); <u>Towery v. Schriro</u>, 641 F.3d 300, 309

23   (9th Cir. 2010). There are three components of a Brady violation: "[1] [t]he evidence at issue

24   must be favorable to the accused, either because it is exculpatory, or because it is

25   impeaching; [2] that evidence must have been suppressed by the State, either willfully or

26   inadvertently; and [3] prejudice must have ensued." <u>Towery</u>, 641 F.3d at 309 (citing <u>Banks v.</u>

27   <u>Dretke</u>, 540 U.S. 668, 691 (2004)). A failure to preserve evidence violates a defendant's right

28   to due process if the unavailable evidence possessed "exculpatory value that was apparent

1  before the evidence was destroyed, and be of such a nature that the defendant would be

2  unable to obtain comparable evidence by other reasonably available means." <u>United States</u>

3  <u>v. Drake</u>, 543 F.3d 1080, 1089 (9th Cir. 2008) (citing <u>California v. Trombetta</u>, 467 U.S. 479,

4  489 (1984)). A defendant must also demonstrate that the police acted in bad faith in failing to

5  preserve the potentially useful evidence. <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988);

6  <u>United States v. Toro-Barboza</u>, 673 F.3d 1136, 1149 (9th Cir. 2012). The presence or absence

7  of bad faith turns on the government's knowledge of the apparent exculpatory value of the

8  evidence at the time it was lost or destroyed. <u>Youngblood</u>, 488 U.S. at 56-57 n.*. "The mere

9  failure to preserve evidence which could have been subjected to tests which might have

10  exonerated the defendant does not constitute a due process violation." <u>Phillips v. Woodford</u>,

11  267 F.3d 966, 987 (9th Cir. 2001) (quoting <u>United States v. Hernandez</u>, 109 F.3d 1450, 1455

12  (9th Cir. 1997). <u>See also</u> <u>Youngblood</u>, 488 U.S. at 57.

13      Petitioner first claims that the police improperly handled the gun and potentially

14  destroyed exculpatory evidence. With regard to the handling of the gun, testimony was

15  provided during trial that the officers searched the area where Officer Jehle heard the sound

16  of metal banging, finding a loaded .22-caliber revolver in a rain gutter. (Lodged Doc. 2 "RT"[4]

17  at 79, 81, 126-128.) The gun was found by Officer Park, who photographed it and then, with

18  gloves on, removed it from the gutter and placed it in a manila envelope. (RT at 80-81.) Officer

19  Park gave the envelope to Officer Jehle. (RT at 128.) Officer Jehle put on gloves and unloaded

20  the revolver, found nine live rounds. (RT at 81, 128.) Jehle tested the gun while it was

21  unloaded, finding it operational, and put the gun and bullets back in the envelope and gave

22  it to Park. (RT at 81-82, 128.) Officer Park then put the firearm in the trunk of his patrol car and

23  booked it into evidence. (RT at 128.)

24      At trial, Officer Jehle testified that the firearm shown to him as an exhibit appeared to

25  be the same firearm Petitioner had pulled from his pocket. (RT at 75.) During the investigation

---

[4] "RT" shall refer to the Reporter's Transcript on Appeal.

1   no identifiable prints were obtained from the revolver. (RT at 82, 91.) Officer Jehle further

2   testified that he has been able to lift viable latent fingerprints from firearms about five percent

3   of the time. (RT at 121.)

4       The state court denied the claim holding that the officer had no reason to believe that

5   there would be exculpatory evidence in the form of someone other than Petitioner's

6   fingerprints on the gun or that his examination of the gun would damage the prints.

7   Accordingly, the court found that Petitioner did not show that the officer acted in bad faith in

8   potentially damaging  the exculpatory evidence. The state court's denial of Petitioner's claim

9   was not an unreasonable application of Supreme Court law.

10      First, it is unclear if the officer's actions in handling the gun with latex gloves destroyed

11  any prints on the gun. As described by the testimony, it is common that latent prints are not

12  found, so the lack of prints is not necessarily because of  the handling of the gun. Regardless,

13  handling the gun, and specifically, unloading the gun before placing it in evidence, does not

14  create an inference of bad faith on the part of the officer. See Grisby v. Blodgett, 130 F.3d

15  365, 371-372 (9th Cir. 1997) ("negligent failure to lift fingerprints does not establish bad faith");

16  see also Villafuerte v. Stewart, 111 F.3d 616, 625 (9th Cir. 1997) ("a negligent investigation

17  does not violate [defendant's] due process rights"). Furthermore, Petitioner also fails to show

18  that there was prejudicial error under Brecht. 507 U.S. at 623. There was substantial evidence

19  in the form of testimony of the police officer that Petitioner was in possession of the gun during

20  the chase, and that the officer heard a distinct noise that he inferred was the sound of the gun

21  being thrown on the roof of the apartment complex. Finally, the fact that a gun was found in

22  the same area is strong evidence that Petitioner was in possession of the gun. Even if other

23  prints were on the gun, it would not necessarily mean that Petitioner was not the last person

24  to have possession of the gun. Petitioner's claim regarding the fingerprints is without merit.

25      Petitioner also claims that a photo album was improperly handled by the police and

26  photographs of the crime scene were improperly presented. Officers searched Petitioner's

27  apartment, and seized a photo album. (RT at 85-86, 132.) Officer Park testified that beside

28

some sticky notes added to the photo album while in police custody, it was in the same condition as when he seized it. (RT at 131.) Additionally, the prosecution utilized pictures of the apartment complex. (RT at 155-163.) Officer Park testified he did not know when pictures of the apartment complex were taken, but they generally accurately depicted the area. (Id.) The trial court admitted the photographs "for the limited purpose of showing what the structure looks like. Nothing more, nothing less. It's clear to me—I suspect clear to the jury—that these were not taken on the date in question. And when they come back in, I'm prepared to remind them of that." (RT at 335.) The court instructed the jury in regards to the photographs that

> everybody agrees those were not taken on October 2nd. They were taken at some later time. We don't know when. Lighting conditions, no doubt, were different, and one of the witnesses shared that with us. [¶] Okay. It's being offered now simply so you have a visual of the structure itself. Okay. And I think it has been well established, and nobody's going to disagree, things may or may not be the same as they were on the date in question. [¶] And in particular, even the officer said, 'I don't know what that is up on the top of that building,' on one of those photographs. [¶] So it's not being offered to show this is exactly what it looked like on the date in question, but just to give you a visual. Okay. So they are coming in for the limited purpose only.

(RT at 357-358.)

In denying Petitioner's claim regarding the photos, the state court correctly found that "there was not an attempt to represent the photographs as having been taken the date of his arrest. The photographs were used as evidence of the complex configuration, but it was made clear they may not have been taken the date of the incident." (Lodged Doc. 9 at 3.) Further, there was no evidence that the photo album was improperly handled by police or that they held some exculpatory value. The photo album was used in an unsuccessful effort to prove gang enhancements.

Petitioner fails to demonstrate that the state court rejection of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Petitioner's claims two, three, and four should be denied.

### E.    Claims Five and Eight: Cunningham Error

Petitioner contends that, under Cunningham v. California, 549 U.S. 270 (2007), the trial court violated his right to jury trial by imposing an upper term based on facts that were neither

1   found by the jury nor admitted by Petitioner. (Pet. at 23-24.) This claim is without merit.

2              1.    Relevant State Court Decision

3       The claim was presented on direct appeal to the Fifth District Court of Appeal. The

4   appellate court denied the claim in a reasoned decision, stating:

5   INTRODUCTION

6       Appellant Nathaniel McKinley Phillips contends the trial court used his
    prior robbery conviction as an aggravating factor to impose an upper term for the
7   current offense and as a qualifying strike prior for purposes of doubling the
    upper term under the three strikes law. Phillips is incorrect. The trial court did not
8   improperly use a single prior conviction for a dual use; Phillips had multiple prior
    convictions. We will affirm the judgment.
9
    FACTUAL AND PROCEDURAL SUMMARY
10
        Because Phillips raises only one issue in this appeal, we present only a
11  brief recitation of facts relevant to the issue.

12      On April 20, 2007, the jury convicted Phillips of possession of a firearm
    by a convicted felon, possession of an unregistered weapon in public, and
13  resisting or obstructing a police officer. The jury also found true that Phillips had
    suffered a prior conviction for robbery that qualified as a strike. In addition, the
14  jury found that Phillips had served three prior prison terms.

15      Phillips had three prior convictions -- robbery in 2002, possession of
    marijuana for sale in 2000, and infliction of corporal injury on a child in 1997.
16  The probation report, which was reviewed and considered by the trial court,
    established that Phillips was on parole at the time he committed the current
17  offenses. Phillips also had a parole violation in 1999.

18      At sentencing, the trial court imposed the upper term of three years for
    the principal term, possession of a firearm by a convicted felon, doubled to six
19  years for the strike prior. In imposing the upper term, the trial court noted
    numerous aggravating factors, including (1) Phillips had several prior convictions
20  as an adult; (2) Phillips was on parole at the time the current offenses were
    committed; and (3) Phillips's prior performance on parole was unsatisfactory as
21  shown by the 1999 parole violation.

22  DISCUSSION

23      Penal Code section 1170, subdivision (b) provides, in part: "[T]he court
    may not impose an upper term by using the fact of any enhancement upon
24  which sentence is imposed under any provision of law." Phillips contends his
    prior robbery conviction was used impermissibly for the dual purpose of
25  imposing the upper term and enhancing the sentence pursuant to the three
    strikes law.
26
        When on appeal an appellant contends there has been an impermissible
27  dual use of facts in sentencing, the appellate court "looks at whether the trial
    court could have based the aggravating factor on evidence other than that which
28  gave rise to the enhancement." (People v. Garcia (1995) 32 Cal.App.4th 1756,
    1775.) In Phillips's case, the record establishes that the prior robbery conviction

1    was not used to both impose the upper term and enhance the sentence under
     the three strikes law.

2

3            The trial court imposed the upper term based on several aggravating
     factors, including the fact that (1) Phillips was on parole at the time he
     committed the current offenses; (2) Phillips had several prior convictions as an

4    adult; and (3) Phillips had performed poorly on parole in the past, as
     demonstrated by his 1999 parole violation. Phillips had three significant prior

5    convictions as an adult; robbery was only one of those convictions.

6            First, there was a "surplus of pertinent prior convictions," exclusive of the
     robbery conviction, sufficient to constitute a valid factor in aggravation. (People

7    v. Forster (1994) 29 Cal.App.4th 1746, 1758.) When a trial court finds that the
     defendant has an extensive criminal record with numerous convictions, we do

8    not presume the trial court impermissibly made dual use of a prior conviction
     that also served to enhance a sentence, unless the record affirmatively

9    establishes such dual use. (People v. Bejarano (1981) 114 Cal.App.3d 693,
     706.) There is no such affirmative showing in the record in Phillips's case.

10

11           Second, a single aggravating factor is sufficient to support imposition of
     the upper or aggravated term. (People v. Osband (1996) 13 Cal.4th 622, 728.)

12   In Phillips's case, there were multiple aggravating factors.

13   DISPOSITION

14           The judgment is affirmed.

15   People v. Phillips, 2008 Cal. App. Unpub. LEXIS 2298, *1-*4 (2008).

16   Petitioner also raised the claim in his petition for writ of habeas corpus with the Kern

17   County Superior Court. The court again denied the claim:

18   VI. SENTENCING ERROR

19           There is no sentencing error under Cunningham v. California (2007) 549
     U.S. 270, 288-289. Petitioner had a jury trial which found petitioner guilty of the

20   underlying convictions, and also found true the prior convictions and prison
     enhancements. The prior convictions coupled with the prison enhancements and

21   the poor performance on parole is evidence of recidivism, and is sufficient
     aggravating factors to permit the imposition of the statutory maximum sentence.

22   People v. Black II (207) 41 Cal.4th 799, 810, 812. People v. Ramirez (2007) 154
     Cal.App.4th 1290. People v. Sandoval (2007) 410 Cal.4th 825, 837. The

23   appellate court upheld the sentence finding no sentencing error based upon the
     numerous aggravating circumstances. Where the appellate court found no

24   sentencing error on the grounds he alleges, he cannot seek redress in habeas
     corpus. In re Waltreus (1965) 62 Cal.2d 218, 225.

25           On the basis of the foregoing, petitioner fails to state a prima facie claim for
     relief under habeas corpus. People v. Romero (1994) 8 Cal.4th 728, 737. The

26   petition for writ of habeas corpus is accordingly denied.

27   (Lodged Doc. 9.)

28

1

### 3.    Legal Standard

2 In a line of cases beginning with Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct.

3 2348, 147 L. Ed. 2d 435 (2000), the United States Supreme Court addressed the effect of

4 various states' sentencing schemes, including California's determinate sentencing law, on a

5 defendant's right to have a jury determine the facts a trial court considers when imposing a

6 sentence. In Apprendi, the Court held "[o]ther than the fact of a prior conviction, any fact that

7 increases the penalty for a crime beyond the prescribed statutory maximum must be submitted

8 to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. Following

9 Apprendi, the United States Supreme Court decided Blakely v. Washington, 542 U.S. 296

10 (2004). In Blakely, the high court explained that the statutory maximum for Apprendi purposes

11 "is not the maximum sentence a judge may impose after finding additional facts, but the

12 maximum he may impose without any additional findings." Blakely, 542 U.S. at 303.

13 The Supreme Court has clearly stated, "[o]ther than the fact of a prior conviction, any

14 fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

15 submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530

16 U.S. 466, 490 (2000). Under this rule, the Court later concluded that California's determinate

17 sentencing scheme did not stand up against the Sixth Amendment because it authorized the

18 judge, rather than the jury, to find facts permitting an upper-term sentence. See Cunningham

19 v. California, 549 U.S. 270, 288 (2007).

20 However, sentencing errors must withstand harmless error review which requires the

21 Defendant to show prejudice. See Washington v. Recuenco, 548 U.S. 212, 215 (2006)

22 (sentencing error requires showing of prejudice); Estrella v. Ollison, 668 F.3d 593, 598 (9th

23 Cir. 2011) (same). On habeas review, it must be determined if the error had a substantial and

24 injurious effect or influence on the sentence. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

25 Using that standard, relief must be granted if there is grave doubt that a jury would have found

26 the relevant aggravating factor beyond a reasonable doubt. Estrella, 668 F.3d at 598.

27

### 4.    Analysis

28 Under these circumstances, it simply cannot be said that Petitioner was prejudiced from

the trial court's alleged failure to submit aggravating sentencing factors to the jury. The court based the decision to sentence Petitioner to the upper term sentence based on the aggravating circumstances that Petitioner had numerous prior criminal convictions and he had served a prior prison term. The prior convictions alone justify the upper-term sentence and need not be submitted to the jury. See Apprendi, 530 U.S. at 490. Thus, Petitioner's claim is without merit and he is not entitled to federal habeas relief. To the extent that the trial court based the aggravating sentencing factors on other conduct of Petitioner than his prior convictions, the error was harmless. On federal habeas review, "a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in Brecht." Fry v. Pliler, 551 U.S. 112, 121 (2007). While the trial court may have stated that the factors were based on 'numerous' prior convictions, there was no dispute that Petitioner had at least two prior convictions, for which he served a prison term. The upper term would have been authorized based the two convictions alone. Petitioner's claim is without merit and must be dismissed.

### F.   Claim Six: Insufficient Evidence

Petitioner claims he was denied his right to due process when he was convicted without sufficient evidence that all the essential elements of the crime were proven, specifically, that the alleged weapon was authentic and capable of firing. (Pet. at 25-26.)

#### 1.   Relevant State Court Decision

The Kern County Superior Court denied Petitioner's claim in a reasoned decision. The Appellate Court and California Supreme Court summarily denied Petitioner's petitions for writ of habeas corpus. Based on the "look-though" doctrine of Ylst v. Nunnemaker, the Kern County Superior Court decision is considered to be adapted by the California Supreme Court and the operative state court decision for this claim. 501 U.S. at 803. In the decision the state court found substantial evidence of Petitioner being in possession of a firearm:

I. SUFFICIENCY OF THE EVIDENCE

Sufficiency of the evidence claims are not cognizable in habeas corpus. In re Lindley (1947) 29 Cal.2d 709, 723. Petitioner points to the fact that he did not have a handgun in his possession, and there was not sufficient chain of custody for the tracing of the handgun, bullets and gang photographs. In a chain

1
2
3
4
5
6
7
8
9

of custody claim the offering party has the burden of showing that taking all circumstances into account including the ease or difficulty with which the particular evidence could have been altered, it is reasonably certain there was no alteration. People v Catlin (2001) 26 Cal.4th 81, 134. The transcripts reveal that both Sgt. Jehle and Officer Park used gloves in handling the handgun and ammunition. The gun was retrieved by Officer Park and placed in an envelope and then handed to Sgt. Jehle. The bullets were extracted by Sgt. Jehle and after examining it to determine if it was operable, both the handgun and bullets were placed back into the envelope for placement into the property room. Sgt. Jehle identified the gun at trial as the one he saw in petitioner's hand and it was connected by serial number as the one seized from the roof. As for the photographs, Officer Eddy testified that once the photographs were taken out of the property room, they remained with him or in his vehicle until they came to court. Based on the types of physical evidence involved and the aforesaid testimony, there is no basis to consider a chain of custody objection which probably explains why petitioner's counsel made none.

(Lodged Doc. 9.)

10

2.   Procedural Bar

11
12

In the last reasoned state court decision the Kern County Superior court denied the

13

claim based on In re Lindley, 29 Cal.2d 709, 723, 177 P.2d 918 (1947). Respondent claims

14

this citation provides an independent and adequate state ground barring federal habeas relief.

15

(Answer at 27-28.) As a general rule, this Court "will not review questions of federal law

16

presented in a habeas petition when the state court's decision rests upon a state-law ground

17

that 'is independent of the federal question and adequate to support the judgment.'" Cone v.

18

Bell, 556 U.S. 449, 465 (2009); Lee v. Kemna, 534 U.S. 362, 375 (2002); Coleman v.

19

Thompson, 501 U.S. 722, 729 (1991). The burden of proving that California's procedural bars

20

are independent and adequate falls on the Respondent. Bennett v. Mueller, 322 F.3d 573,

21

585-86 (9th Cir. 2003). Once the state meets its burden, Petitioner may rebut the bar by

22

"asserting specific factual allegations that demonstrate the inadequacy of the state procedure,

23

including citation to authority demonstrating inconsistent application of the rule." Id. at 586

24

(further noting that the "ultimate" burden on the issue lies with the state).

25

Petitioner's claim is barred under Lindley. In Lindley, the California Supreme Court held

26

"the sufficiency of the evidence to warrant the conviction of the petitioner is not a proper issue

27

for consideration" in state habeas proceedings. 29 Cal.2d at 723. In Carter v. Giurbino, the

28

Ninth Circuit determined that the "Lindley rule is not intertwined with federal substantive or

procedural law" and, therefore, "Lindley is an independent state ground." 385 F.3d 1194,

1   1197-98 (9th Cir. 2004).

2   To overcome the <u>Lindley</u> procedural bars to federal habeas review, a Petitioner must
3   either show cause and prejudice or demonstrate that the failure to consider the claim will
4   "result in a 'fundamental miscarriage of justice.'" <u>Harris v. Reed</u>, 489 U.S. 255, 262, 109 S. Ct.
5   1038, 103 L. Ed. 2d 308 (1989) (citations omitted). To show cause, Petitioner must
6   demonstrate an "external impediment" such as "government interference or the unreasonable
7   unavailability of the factual basis for the claim." <u>McCleskey v. Zant</u>, 499 U.S. 467, 497 (1991).
8   Petitioner provides no description of any such "external impediment". (<u>See</u> generally, Pet.,
9   Traverse.) Furthermore, Plaintiff does not provide any "citation to authority demonstrating
10  inconsistent application" of <u>Lindley</u> rule as required under <u>Bennett</u>, 322 F.3d at 586.
11  Accordingly, Petitioner's claim is procedurally barred from federal habeas review.

12              3.    <u>Merits of Sufficiency Claim</u>

13  Even if Petitioner's claim was not procedurally barred from review, Petitioner's claim
14  lacks merit.

15              a.    Legal Standard - Sufficiency of the Evidence

16  When a challenge is brought alleging insufficient evidence, federal habeas corpus relief
17  is available if it is found that upon the record evidence adduced at trial, viewed in the light most
18  favorable to the prosecution, no rational trier of fact could have found "the essential elements
19  of the crime" proven beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319
20  (1979). <u>Jackson</u> established a two-step inquiry for considering a challenge to a conviction
21  based on sufficiency of the evidence. <u>United States v. Nevils</u>, 598 F.3d 1158, 1164 (9th Cir.
22  2010) (en banc). First, the court considers the evidence at trial in the light most favorable to
23  the prosecution. <u>Id.</u>, citing <u>Jackson</u>, 443 U.S. at 319. "'[W]hen faced with a record of historical
24  facts that supports conflicting inferences," a reviewing court 'must presume - even if it does
25  not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor
26  of the prosecution, and must defer to that resolution.'" <u>Id.</u>, quoting <u>Jackson</u>, 443 U.S. at 326,
27  99 S.Ct. 2781.

28  "Second, after viewing the evidence in the light most favorable to the prosecution, a

1   reviewing court must determine whether this evidence, so viewed is adequate to allow '*any*

2   rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'"

3   Id., quoting Jackson, 443 U.S. at 319 (emphasis in original). "At this second step, we must

4   reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all

5   rational fact finders would have to conclude that the evidence of guilt fails to establish every

6   element of the crime beyond a reasonable doubt." Id.

7       Superimposed on these already stringent insufficiency standards is the AEDPA

8   requirement that even if a federal court were to initially find on its own that no reasonable jury

9   should have arrived at its conclusion, the federal court must also determine that the state

10  appellate court not have affirmed the verdict under the Jackson standard in the absence of an

11  unreasonable determination. Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005); see also Boyer

12  v. Belleque, 659 F.3d 957, 964 (9th Cir. 2011) ("Thus, when we assess a sufficiency of

13  evidence challenge in the case of a state prisoner seeking federal habeas corpus relief subject

14  to the strictures of AEDPA, there is a double dose of deference that can rarely be

15  surmounted.")

16              b.     Argument and Analysis

17      As described by the Kern County Superior Court found in the last reasoned decision

18  by the state court, there was strong evidence of Petitioner's guilt. Police saw Petitioner remove

19  a firearm from his right front pants pocket and run while holding the gun by its frame. (RT at

20  73-77, 96.) The officer heard metal banging from near where Petitioner was running. (Id. at

21  77.) When the officer next saw Petitioner he was stopped and had no weapon. (Id. at 78.) A

22  loaded .22-caliber revolver, which appeared to be the same firearm Petitioner had pulled from

23  his pocket, was found in a rain gutter near where the sound was heard and Petitioner was

24  seen fleeing with a gun. (Id. at 79, 81, 126-128.) The gun contained nine live rounds and

25  appeared opertational. (Id. at 81-82, 128.) There was no countervailing evidence that either

26  the gun was inoperable or the ammunition was not live.

27      Viewing the evidence in the light most favorable to the prosecution, and for the reasons

28  expressed by the state court, there was sufficient evidence introduced at Petitioner's trial to

support the jury's verdict. As explained by the state court, there was evidence introduced at

Petitioner's trial from which a rational jury could conclude that Petitioner was in possession of

a firearm. This evidence is sufficient to support Petitioner's conviction. The conclusion of the

state court that sufficient evidence supported the guilty verdict in this case is not contrary or

an unreasonable application of United States Supreme Court authority. Accordingly, Petitioner

is not entitled to relief on this claim.

### G.    Claim Seven - Ineffective Assistance of Counsel

Petitioner's seventh claim alleges that he was deprived of his Sixth Amendment right

to effective assistance of counsel when his attorney failed to call exculpatory witnesses.

Specifically he claims that Petitioner failed to call a witness of the foot chase that did not see

Petitioner in possession of a gun, and that he failed to have a police officer testify that the

police searched a much larger portion of the roof of the apartment complex's roof to find the

firearm. Respondent contends Petitioner is incorrect and the state court reasonably rejected

the claim.  This claim was also presented to the Kern County Superior Court by way of habeas

corpus. The court issued the last reasoned decision, as follows:

IV. INEFFECTIVE ASSISTANCE OF COUNSEL

> To prevail in a claim for ineffective assistance of counsel, petitioner must show actual prejudice, which if it exists so fundamentally undermined the trial that it is more probable that the outcome would be different. Strickland v. Washington (1984) 466 U.S. 668, 694. Petitioner contends that the failure to investigate Joseph Atilano and call him as a witness resulted in his conviction. Atilano's statement to the police was that although he did not see petitioner with the gun, he heard a loud bang consistent with metal hitting metal. He further advised the sound was consistent with the gun hitting the rain gutter. the witness, if called, would have corroborated Sgt. Jehle. Whether or not to call a witness is generally deemed a tactical decision by counsel. Courts will not second guess counsel's decision unless there is such a fundamental shift in the trial paradigm that the witness would fundamentally cast doubt on the proceedings. People v. Eeagle (1972) 6 Cal.3d 441, 458. Nor is counsel required to investigate all witnesses. People v. Jackson (1980) 28 Cal.3d 264, 289. Since the statement by Mr. Atilano is not favorable to petitioner, there would be no need for the court to second guess petitioner's counsel. Eeagle, supra at 458.

(Lodged Doc. 9.)

### 1.    Legal Standard for Ineffective Assistance of Counsel

The law governing ineffective assistance of counsel claims is clearly established for the

purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. Strickland v. Washington, 466 U.S. 668 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; see also, Harrington v. Richter, 131 S. Ct. 770 (2011).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Id. at 687. The Court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n.25

(1984).

As the Supreme Court reaffirmed recently in <u>Harrington v. Richter</u>, meeting the standard for ineffective assistance of counsel in federal habeas is extremely difficult:

> The pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable. This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." <u>Williams</u>, <u>supra</u>, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid</u>. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 131 S. Ct. at 785-86.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> at 786. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." <u>Id.</u> "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Id.</u> at 786-87.

Accordingly, even if Petitioner presents a strong case of ineffective assistance of counsel,  this Court may only grant relief if no fairminded jurist could agree on the correctness of the state court decision.

        2.   <u>Analysis</u>

Under AEDPA, the question before this court is whether the state court's ruling with

1 regards to ineffective assistance of counsel was contrary to, or an unreasonable application

2 of, the clearly established federal law as stated in Strickland. The state court based its ruling

3 on Petitioner's failure to satisfy that Petitioner's counsel's representation fell below an objective

4 standard of reasonableness under Strickland.

5       Petitioner, in his Kern County Superior Court habeas petition alleged his trial counsel

6 was ineffective for failing to interview and call three witnesses: a person who supposedly

7 observed the pursuit, an officer who helped conduct the search and Petitioner's mother. The

8 petition claimed that a witness, Atilano, saw the chase through the apartment complex but did

9 not see Petitioner with a firearm. (Lodged Doc. 8 at 22.) However, according to police reports,

10 the witness did state that he saw Petitioner being chased by the officer and heard a loud

11 banging sound, which corroborates the statements of the officers. (Lodged Doc. 8, Ex. A1

12 (Bakersfield Police Report) at 8.) Petitioner also assets that officer Toney Hannon would testify

13 "that there was an extensive widespread search of several balconies and roof tops ... rais[ing]

14 a reasonable doubt that the weapon discovered was actually the one allegedly discarded by

15 petitioner." (Pet. at 27.)

16       This Court agrees with the state court's conclusion that, based on the evidence at trial,

17 that the witnesses would not have provided statements that were favorable to Petitioner, and

18 counsel's strategy in not presenting the witnesses was reasonable. The witness, Atilano, gave

19 a statement that was consistent with the testimony of the officers. While he did not see

20 Petitioner with a firearm, he heard a loud bang consistent with metal hitting metal and only saw

21 Petitioner and the officer in the area. His statement was more favorable to corroborate the

22 prosecution's version of events. Failing to call him as a witness was not ineffective assistance

23 of counsel. Further, the fact that officer Hannon may have looked on other balconies and roof

24 tops, does not undermine the ultimate fact that a gun was found in a rain gutter near where

25 Petitioner was seen running with a similar looking gun and where the chasing officer heard a

26 sound consistent with the gun being tossed into a rain gutter.

27       The state court did not apply any federal law in a manner that was contrary to, or

28 involved an unreasonable application of, the rule in Strickland, or that it based its holding on

1   an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. §

2   2254(d).  Accordingly, Petitioner's seventh claim for relief is denied.

3   **II.      FINDINGS AND RECOMMENDATIONS**

4           Accordingly, it is hereby recommended that the petition for a writ of habeas corpus be

5   DENIED with prejudice. It is further recommended that the Clerk of Court be directed to enter

6   judgment.

7           This Findings and Recommendation is submitted to the assigned District Judge,

8   pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being

9   served with the Findings and Recommendation, any party may file written objections with the

10  Court and serve a copy on all parties.  Such a document should be captioned "Objections to

11  Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be

12  served and filed within fourteen (14) days after service of the objections.  The parties are

13  advised that failure to file objections within the specified time may waive the right to appeal the

14  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

15

16

17  IT IS SO ORDERED.

18  Dated:   ___November 11, 2012___          /s/ _Michael J. Seng_
                                              UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28